**Fill in this information to identify the case:**

United States Bankruptcy Court for the:

**Northern District of Texas**
(State)

Case number *(if known)*: _____   Chapter ___11___

☐ Check if this is an amended filing

<u>Official Form 201</u>

# Voluntary Petition for Non-Individuals Filing for Bankruptcy

*06/22*

If more space is needed, attach a separate sheet to this form.  On the top of any additional pages, write the debtor's name and the case number (if known).  For more information, a separate document, *Instructions for Bankruptcy Forms for Non-Individuals*, is available.

| | | |
|---|---|---|
| 1. | **Debtor's Name** | **CARE ALLIANCE, L.L.C.** |

| | | |
|---|---|---|
| 2. | **All other names debtor used in the last 8 years**<br><br>Include any assumed names, trade names, and *doing business as* names | |

| | | |
|---|---|---|
| 3. | **Debtor's federal Employer Identification Number** (EIN) | 3   8   -   3   9   8   6   1   4   3 |

4. **Debtor's address**

**Principal place of business**

Number        Street
**1000 NW 57th Court, Suite 400**

**Miami, FL 33126**
City                State    Zip Code

**Miami-Dade County**
County

**Mailing address, if different from principal place of business**

Number        Street

P.O. Box

City                State    Zip Code

**Location of principal assets, if different from principal place of business**

Number        Street

City                State    Zip Code

| | | |
|---|---|---|
| 5. | **Debtor's website** (URL) | https://ir.caremax.com |

| | | |
|---|---|---|
| 6. | **Type of debtor** | ☒ Corporation (including Limited Liability Company (LLC) and Limited Liability Partnership (LLP))<br><br>☐ Partnership (excluding LLP)<br><br>☐ Other. Specify: _____ |

---

Debtor    **CARE ALLIANCE, L.L.C.**                                    Case number *(if known)* _____
          Name

---

**7. Describe debtor's business**

A. *Check One:*

☒ Health Care Business (as defined in 11 U.S.C. § 101(27A))

☐ Single Asset Real Estate (as defined in 11 U.S.C. § 101(51B))

☐ Railroad (as defined in 11 U.S.C. § 101(44))

☐ Stockbroker (as defined in 11 U.S.C. § 101(53A))

☐ Commodity Broker (as defined in 11 U.S.C. § 101(6))

☐ Clearing Bank (as defined in 11 U.S.C. § 781(3))

☐ None of the above

B. *Check all that apply:*

☐ Tax-exempt entity (as described in 26 U.S.C. § 501)

☐ Investment company, including hedge fund or pooled investment vehicle (as defined in 15 U.S.C. § 80a-3)

☐ Investment advisor (as defined in 15 U.S.C. § 80b-2(a)(11))

C. NAICS (North American Industry Classification System) 4-digit code that best describes debtor. See http://www.uscourts.gov/four-digit-national-association-naics-codes .
**5415 - Custom Computer Programming Services**

---

**8. Under which chapter of the Bankruptcy Code is the debtor filing?**

A debtor who is a "small business debtor" must check the first sub- box. A debtor as defined in § 1182(1) who elects to proceed under subchapter V of chapter 11 (whether or not the debtor is a "small business debtor") must check the second sub-box

*Check One:*

☐ Chapter 7

☐ Chapter 9

☒ Chapter 11. *Check all that apply:*

☐ The debtor is a small business debtor as defined in 11 U.S.C. § 101(51D), and its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $3,024,725. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☐ The debtor is a debtor as defined in 11 U.S.C. § 1182(1), its aggregate noncontingent liquidated debts (excluding debts owed to insiders or affiliates) are less than $7,500,000, and it chooses to proceed under Subchapter V of Chapter 11. If this sub-box is selected, attach the most recent balance sheet, statement of operations, cash-flow statement, and federal income tax return, or if any of these documents do not exist, follow the procedure in 11 U.S.C. § 1116(1)(B).

☒ A plan is being filed with this petition.

☐ Acceptances of the plan were solicited prepetition from one or more classes of creditors, in accordance with 11 U.S.C. § 1126(b).

☐ The debtor is required to file periodic reports (for example, 10K and 10Q) with the Securities and Exchange Commission according to § 13 or 15(d) of the Securities Exchange Act of 1934. File the *Attachment to Voluntary Petition for Non-Individuals Filing for Bankruptcy under Chapter 11* (Official Form 201A) with this form.

☐ The debtor is a shell company as defined in the Securities Exchange Act of 1934 Rule 12b-2.

☐ Chapter 12

---

**9. Were prior bankruptcy cases filed by or against the debtor within the last 8 years?**

If more than 2 cases, attach a separate list.

☒ No
☐ Yes.

| District _____ | When _____MM/DD/YYYY | Case number _____ |
| District _____ | When _____MM/DD/YYYY | Case number _____ |

---

Debtor      __CARE ALLIANCE, L.L.C._____      Case number *(if known)* _____
       Name

**10. Are any bankruptcy cases pending or being filed by a business partner or an affiliate of the debtor?**

☐ No
☒ Yes.   Debtor   __See Attached Rider 1_____   Relationship _____

List all cases.  If more than 1, attach a separate list.

District   __Northern District of Texas_____

When

Case number, if known   _____      MM / DD / YYYY

**11. Why is the case filed in *this* district?**

*Check all that apply:*

☐   Debtor has had its domicile, principal place of business, or principal assets in this district for 180 days immediately preceding the date of this petition or for a longer part of such 180 days than in any other district.

☒   A bankruptcy case concerning debtor's affiliate, general partner, or partnership is pending in this district.

**12. Does the debtor own or have possession of any real property or personal property that needs immediate attention?**

☒ No
☐ Yes.  Answer below for each property that needs immediate attention.  Attach additional sheets if needed.

**Why does the property need immediate attention?** (*Check all that apply.*)

☐   It poses or is alleged to pose a threat of imminent and identifiable hazard to public health or safety.

What is the hazard?   _____

☐   It needs to be physically secured or protected from the weather.

☐   It includes perishable goods or assets that could quickly deteriorate or lose value without attention (for example, livestock, seasonal goods, meat, dairy, produce, or securities-related assets or other options).

☐   Other   _____

**Where is the property?**   _____
                    Number      Street

_____
City                    State      Zip Code

**Is the property insured?**

☐ No

☐ Yes.   Insurance agency   _____

Contact name   _____

Phone   _____

---

| **Statistical and administrative information** |
| --- |

**13. Debtor's estimation of available funds**

*Check one:*

☒ Funds will be available for distribution to unsecured creditors.
☐ After any administrative expenses are paid, no funds will be available for distribution to unsecured creditors.

**14. Estimated number of creditors (on a consolidated basis)**

☐   1-49              ☐   1,000-5,000       ☐   25,001-50,000
☐   50-99             ☒   5,001-10,000       ☐   50,001-100,000
☐   100-199           ☐   10,001-25,000      ☐   More than 100,000
☐   200-999

Debtor    **CARE ALLIANCE, L.L.C.**                                        Case number *(if known)* _____
     Name

| 15. Estimated assets (on a consolidated basis) | ☐ $0–$50,000 | ☐ $1,000,001–$10 million | ☐ $500,000,001–$1 billion |
|---|---|---|---|
| | ☐ $50,001–$100,000 | ☐ $10,000,001–$50 million | ☐ $1,000,000,001–$10 billion |
| | ☐ $100,001–$500,000 | ☐ $50,000,001–$100 million | ☐ $10,000,000,001–$50 billion |
| | ☐ $500,001–$1 million | ☒ $100,000,001–$500 million | ☐ More than $50 billion |

| 16. Estimated liabilities (on a consolidated basis) | ☐ $0–$50,000 | ☐ $1,000,001–$10 million | ☒ $500,000,001–$1 billion |
|---|---|---|---|
| | ☐ $50,001–$100,000 | ☐ $10,000,001–$50 million | ☐ $1,000,000,001–$10 billion |
| | ☐ $100,001–$500,000 | ☐ $50,000,001–$100 million | ☐ $10,000,000,001–$50 billion |
| | ☐ $500,001–$1 million | ☐ $100,000,001–$500 million | ☐ More than $50 billion |

## Request for Relief, Declaration, and Signatures

**WARNING --**   Bankruptcy fraud is a serious crime.  Making a false statement in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both.  18 U.S.C. §§ 152, 1341, 1519, and 3571.

**17. Declaration and signature of authorized representative of debtor**

The debtor requests relief in accordance with the chapter of title 11, United States Code, specified in this petition.

I have been authorized to file this petition on behalf of the debtor.

I have examined the information in this petition and have a reasonable belief that the information is true and correct.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on   _11/17/2024_
               MM/ DD / YYYY

DocuSigned by:

✗  *Paul Rundell*                                          **Paul Rundell**
  Signature of authorized representative of debtor      Printed name

Title   __Chief Restructuring Officer__

**18. Signature of attorney**

✗   _/s/ Thomas R. Califano_                    Date   _11/17/2024_
   Signature of attorney for debtor                        MM/DD/YYYY

**Thomas R. Califano**
Printed name

**Sidley Austin LLP**
Firm name

**2021 McKinney Avenue, Suite 2000**
Number         Street

**Dallas**                                      **TX**      **75201**
City                                            State     ZIP Code

**(214) 981-3300**                              **tom.califano@sidley.com**
Contact phone                                   Email address

**24122825**                          **TX**
Bar number                            State

<table>
<tr><td><strong>Fill in this information to identify the case:</strong></td></tr>
</table>

United States Bankruptcy Court for the:

**Northern District of Texas**

(State)

Case number (*if known*): _____     Chapter ___11___

☐ Check if this is an
amended filing

## <u>Rider 1</u>
## <u>Pending Bankruptcy Cases Filed by the Debtor and Affiliates of the Debtor</u>

On the date hereof, each of the entities listed below (collectively, the "<u>Debtors</u>") filed a petition in the United States Bankruptcy Court for the Northern District of Texas for relief under chapter 11 of title 11 of the United States Code.  The Debtors have moved for joint administration of these cases under the case number assigned to the chapter 11 case of CareMax, Inc.

- SPARTA TEXAS ACO, INC.

- CAREMAX, INC.

- CAREMAX MEDICAL CENTER OF BROWARD, L.L.C.

- SUNSET HOLDING, L.L.C.

- CARE OPTIMIZE, L.L.C.

- CAREMAX MEDICAL CENTER OF LITTLE HAVANA, L.L.C.

- CAREMAX MANAGEMENT L.L.C.

- SUNSET CARDIOLOGY, L.L.C.

- PHYSICIAN SERVICE ORGANIZATION, L.L.C.

- CAREMAX IPA, L.L.C.

- CAREMAX MEDICAL GROUP, L.L.C.

- CAREMAX MEDICAL CENTER OF HIALEAH, L.L.C.

- SENIOR MEDICAL ASSOCIATES, L.L.C.

- CAREMAX OF MIAMI, L.L.C.

- CAREMAX MEDICAL CENTER OF NORTH MIAMI, L.L.C.

- CAREMED PHARMACY, L.L.C.

- CAREMAX MEDICAL CENTER OF TAMARAC, L.L.C.

- CAREMAX MEDICAL CENTER OF WESTCHESTER, L.L.C.

- JESUS MONTESANO M.D., L.L.C.

- HEALTHCARE ADVISORY SOLUTIONS, L.L.C.

- MANAGED HEALTHCARE PARTNERS, L.L.C.

- IMC MEDICAL GROUP HOLDINGS, L.L.C.

- CAREMAX MEDICAL CENTERS OF CENTRAL FLORIDA, L.L.C.

- CARE GARAGE, L.L.C.

- ANALITICO, L.L.C.

- INTERAMERICAN MEDICAL CENTER GROUP, L.L.C.

- CLEAR SCRIPTS, L.L.C.

- PRIMARY PROVIDER, INC.

- CAREMAX MEDICAL CENTER OF PEMBROKE PINES, L.L.C.

- JOSE ORCASITA-NG, L.L.C.

- CARE HOLDINGS GROUP, L.L.C.

- CAREMAX MEDICAL CENTER OF HOMESTEAD, L.L.C.

- IMC TRANSPORT FLEET, L.L.C.

- PINES CARE MEDICAL CENTER, L.L.C.

- CAREMAX MEDICAL CENTER OF CORAL WAY, L.L.C.

- STALLION MEDICAL MANAGEMENT, L.L.C.

- CAREMAX MEDICAL CENTER, L.L.C.

- CAREMAX MEDICAL CENTER OF LITTLE HAVANA II, L.L.C.

- CAREMAX MEDICAL CENTER OF EAST HIALEAH, L.L.C.

- SPARTA MERGER SUB I L.L.C.

- SPARTA MERGER SUB II L.L.C.

- SPARTA MERGER SUB III L.L.C.

- CAREMAX ACCOUNTABLE CARE NETWORK, L.L.C.

- CAREMAX NATIONAL CARE NETWORK, L.L.C.

- CAREMAX HEALTH PARTNERS, L.L.C.

- CAREMAX HOLDINGS, L.L.C.

- CAREMAX MEDICAL CENTERS OF LOUISIANA, L.L.C.

- MEDICAL CARE OF TEXAS, P.L.L.C.

- MEDICAL CARE OF TENNESSEE, P.L.L.C.

- MEDICAL CARE OF NY, P.C.

- CARE OPTICAL, L.L.C.

- SAPPHIRE HOLDINGS, L.L.C.

- RX MARINE INC.

## ACTION BY WRITTEN CONSENT OF THE GOVERNING BODIES
## OF
## THE ENTITIES LISTED IN SCHEDULE A

November 17, 2024

THE UNDERSIGNED, being all, or a majority, of the members of the board of managers (as applicable), all the members of the board of directors, the sole manager or the sole member, as applicable (each, a "**Governing Body**" and, collectively, the "**Governing Bodies**") of each of the companies listed on **Schedule A** hereto (each, a "**Company**" and, collectively, the "**Companies**"), do hereby consent to, adopt and approve by written consent the following resolutions and each and every action effected thereby with the same force and effect as if they had been adopted at duly convened meetings of the Governing Bodies, and direct that this written consent be filed with the minutes of the proceedings of the relevant Governing Body:

WHEREAS, each Governing Body has considered certain materials presented by, or on behalf of, each Company's management ("**Management**") and financial and legal advisors (collectively, the "**Advisors**"), including, but not limited to, materials regarding the liabilities, obligations, and liquidity of the Companies, the strategic alternatives available to the Companies, and the impact of the foregoing on each Company's business and the business of each Company's affiliates;

WHEREAS, each Governing Body has reviewed and considered presentations by Management and the Advisors of each Company regarding the advantages and disadvantages of filing a voluntary petition for relief (the "**Bankruptcy Petition**") for each Company pursuant to chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 et seq. (as amended, the "**Bankruptcy Code**");

WHEREAS, CareMax, Inc., a Delaware corporation and an affiliate of each Company ("**CareMax**"), in consultation with its Advisors, determined it was in the best interest of CareMax and each Company to pursue a sale or a series of sales or strategic transactions with respect to CareMax's management services organization ("**MSO**") business and non-MSO assets (the "**Core Centers Assets**"), to be consummated through the chapter 11 cases of the Company and its debtor affiliates (the "**Bankruptcy Cases**"), to be filed in the United States Bankruptcy Court for the Northern District of Texas (the "**Bankruptcy Court**");

WHEREAS, CareMax, with the assistance of its Advisors, conducted a fulsome marketing and sale process in order to receive the highest or otherwise best offer for the sale of and/or strategic transaction related to each Company's assets and intends to file bidding procedures in the Bankruptcy Cases to continue such Sale Process with respect to certain assets (as defined below);

WHEREAS, the Board of Directors of CareMax, together with the sole member (the "**Sole Member**") of each of Sparta Merger Sub I, LLC, a Delaware limited liability company ("**Merger Sub I**"), and Sparta Merger Sub II, LLC, a Delaware limited liability company (together with Merger Sub I, the "**Merger Subs**"), have been presented with the terms and conditions pursuant to which CareMax and the Merger Subs would enter into that certain Securities Purchase Agreement (the "**SPA**"), by and among RHG Network, LLC, a Delaware limited liability company (the "**MSO Buyer**"), CareMax, and the Merger Subs, pursuant to which, among other matters, the MSO Buyer would acquire all or a subset of CareMax's MSO business;

WHEREAS, each Company, with the assistance of its Advisors, intends to pursue the Bankruptcy Cases in a value-maximizing and effective fashion, and to file all pleadings or documents, including a

chapter 11 plan (the "**Plan**") and a related disclosure statement (the "**Disclosure Statement**"), that may be required to effectively resolve the Bankruptcy Cases;

WHEREAS, each Governing Body has had adequate opportunity to consult with its Management and the Advisors regarding the materials presented, to obtain additional information, and to fully consider each of the strategic alternatives available to each Company;

WHEREAS, each Governing Body has determined, in the judgment of each Governing Body, that the following resolutions are advisable and in the best interests of each Company, its interest holders, its subsidiaries, its creditors, and other parties in interest; and

WHEREAS, each Governing Body has considered its fiduciary duties under applicable law in exercising its powers and discharging its duties, to act honestly and in good faith with a view to the best interests of each Company as a whole, and to exercise the care, diligence, and skill that a reasonably prudent person would exercise in comparable circumstances.

<u>Voluntary Petition for Relief under Applicable Bankruptcy Law and Seeking Necessary Relief</u>

NOW, THEREFORE, BE IT RESOLVED, that in the judgment of each Governing Body, it is desirable and in the best interests of such Company, its interest holders, its subsidiaries, its creditors, and other parties in interest that the Company shall be, and hereby is, in all respects authorized to file, or cause to be filed, the Bankruptcy Petition for the Company under the provisions of chapter 11 of the Bankruptcy Code in the Bankruptcy Court or other court of competent jurisdiction, and any other petition for relief or recognition or other order that may be desirable under applicable law in the United States; and, in accordance with the requirements of the Company's governing documents and applicable law, hereby consents to, authorizes, and approves, the filing of the Bankruptcy Petition;

RESOLVED FURTHER, that any director, manager or duly appointed officer of each Company, each acting individually and with full power of substitution (together with any persons to whom such persons delegate certain responsibilities, collectively, the "**Authorized Persons**") be, and hereby is, authorized to execute and file on behalf of the Company and its subsidiaries all petitions, schedules, lists, and other motions, papers, or documents, and to take any and all action that such Authorized Person deems necessary or proper to obtain such relief, including, but not limited to, any action necessary or proper to maintain the ordinary course operations of such Company or any of its subsidiaries;

<u>Retention of Professionals</u>

RESOLVED FURTHER, that each of the Authorized Persons, acting individually and with full power of substitution, be, and hereby is, authorized, empowered and directed to employ the following professionals on behalf of each Company: (i) the law firm of Sidley Austin LLP, as general restructuring counsel; (ii) the firm of Alvarez & Marsal North America, LLC, as financial advisor; (iii) Piper Sandler & Co., as investment banker; (iv) Stretto, Inc., as claims, noticing, and solicitation agent; and (v) any other legal counsel, accountants, financial advisors, restructuring advisors, or other professionals such Authorized Person deems necessary, appropriate, or advisable; each to represent and assist such Company in carrying out its duties and responsibilities and exercising its rights under the Bankruptcy Code and any applicable law (including, but not limited to, the law firms filing any pleadings or responses) and to take any and all actions to advance the rights and obligations of each Company, including filing any motions, objections, replies, applications, or pleadings; and in connection therewith, each of the Authorized Persons be, and hereby is authorized, empowered, and directed, in accordance with the terms and conditions hereof, to execute appropriate retention agreements, pay appropriate retainers, and to cause to be filed appropriate applications for authority to retain such services;

2

<u>Entry Into Restructuring Support Agreement, Plan, and Disclosure Statement</u>

RESOLVED FURTHER, that in connection with the Bankruptcy Petition, it is in the best interest of each Company to enter into a Restructuring Support Agreement (collectively with all term sheets, exhibits and schedules thereto, the "**Restructuring Support Agreement**") on terms and conditions substantially similar to those set forth in the form of Restructuring Support Agreement previously provided and/or described to each Governing Body, with such changes, additions, and modifications thereto as an Authorized Person shall approve;

RESOLVED FURTHER, that (a) the forms, terms and provisions of the Restructuring Support Agreement, and any exhibits annexed thereto, (b) the execution, delivery, and performance thereof, and (c) the consummation of the transactions contemplated thereunder by the Company are hereby authorized, approved, and declared advisable and in the best interest of each Company with such changes therein and additions thereto as any applicable Authorized Person of each Company executing the same may, in such Authorized Person's discretion, deem necessary or appropriate, it being acknowledged that the execution of the Restructuring Support Agreement and such other documents, agreements, instructions and certificates as may be required or contemplated by the Restructuring Support Agreement, as applicable, shall be conclusive evidence of the approval thereof;

RESOLVED FURTHER, that any applicable Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of the applicable Company, to cause such Company to enter into, execute, deliver, certify, file and/or record, and perform the obligations arising under, the Restructuring Support Agreement, substantially in the form previously presented to or described to each Governing Body, together with such other documents, agreements, instruments, and certificates as may be required by the Restructuring Support Agreement;

RESOLVED FURTHER, that any applicable Authorized Person, in each case, acting singly or jointly, be, and each hereby is, authorized, empowered, and directed, with full power of delegation, in the name and on behalf of each Company, to execute and deliver any amendments, supplements, modifications, renewals, replacements, consolidations, substitutions, and extensions of the Restructuring Support Agreement, and/or any of the related documents which shall, in such Authorized Person's judgment, be necessary, proper or advisable; and

RESOLVED FURTHER, that in the business judgment of the Board, it is desirable and in the best interest of the Company, its creditors, and other parties in interest that the Company file or cause to be filed the Plan and the Disclosure Statement, and all other papers or documents (including any amendments) related thereto, and to take any and all actions necessary or appropriate to file or cause to filed the Plan and the Disclosure Statement;

<u>Cash Collateral, Debtor-in-Possession Financing, and Adequate Protection</u>

RESOLVED FURTHER, that each Company will obtain benefits, as necessary or convenient to the conduct, promotion, maintenance, and attainment of the business of each Company, from (a) the use of collateral, including cash collateral, as that term is defined in section 363(a) of the Bankruptcy Code (the "**Cash Collateral**"), to the extent applicable, which is security for prepetition secured lenders and the prepetition secured agent (collectively, the "**Secured Parties**"), if any; (b) entry into a $122,000,000 senior secured superpriority debtor-in-possession term loan facility pursuant to that certain senior secured Superpriority Priming Debtor-in-Possession Credit Agreement, by and among CareMax, Inc., a Delaware corporation, as the borrower, certain subsidiaries of the borrower from time to time party thereto as guarantors, the lenders from time to time party thereto, and Acquiom Agency Services LLC, as

administrative agent and as collateral agent (the "**DIP Credit Agreement**"), which shall include: (i) a new money term loan facility (the "**New Money DIP Facility**" and the loans advanced under the New Money DIP Facility, the "**New Money DIP Loans**"), and (ii) upon entry of a final order by the Bankruptcy Court authorizing the DIP Facility, a roll-up facility (the "**Roll-Up Facility**," and the loans deemed made thereunder the "**Roll-Up Loans**," and the Roll-Up Loans together with the New Money DIP Loans, the "**DIP Facility**") in each case, subject to the priorities and on terms and conditions set forth in the DIP Credit Agreement;

RESOLVED FURTHER, that in order to use and obtain the benefits of the DIP Facility and any Cash Collateral, and in accordance with section 363 of the Bankruptcy Code, each Company will grant and allow perfection of certain liens and other security interests in favor of and for the benefit of the Secured Parties (the "**Adequate Protection Obligations**"), as documented in a proposed interim order (the "**DIP Order**") to be filed with the Bankruptcy Court;

RESOLVED FURTHER, that the form, terms, and provisions of the DIP Facility be, and hereby are, in all respects approved on the terms and conditions substantially similar to those set forth in the form of DIP Documents (as defined below) previously provided and/or described to the Governing Bodies, and each Company is authorized and empowered to (a) enter into each DIP Facility, subject to approval by the Bankruptcy Court, and (b) seek entry of the DIP Order and any other such order authorizing entry into, and consummation of, the DIP Facility and the DIP Documents;

RESOLVED FURTHER, that the form, terms, and provisions of the DIP Order to which each Company is or will be subject, and the actions and transactions contemplated thereby be, and hereby are, authorized, adopted, and approved, and each of the Authorized Persons of each Company be, and hereby is, authorized, directed, and empowered, in the name of and on behalf of each Company, to take such actions and negotiate or cause to be prepared and negotiated and to execute, deliver, perform, and cause the performance of (a) the DIP Order and the DIP Credit Agreement, (b) such other agreements, certificates, instruments, notices, receipts, recordings, filings, petitions, motions, or other papers or documents to which each Company is or will be a party, including, but not limited to, any security and pledge agreement or guaranty agreement (collectively, with the DIP Order and the DIP Credit Agreement, the "**DIP Documents**"), and (c) any amendments or modifications to the DIP Documents (with such changes, modifications, additions, deletions, and amendments thereto as any Authorized Person in his or her sole discretion shall deem required, necessary, appropriate, desirable or advisable, the approval of which shall be conclusively established by the execution and delivery thereof);

RESOLVED FURTHER, that each Company, as debtor and debtor in possession under the Bankruptcy Code, upon filing of the Bankruptcy Petition, be, and hereby is, authorized to incur the Adequate Protection Obligations and to undertake any and all related transactions on substantially the same terms as contemplated under the DIP Documents (collectively, the "**DIP Transactions**"), including the guaranty of the obligations thereunder and the granting of liens on substantially all of its assets to secure such obligations;

RESOLVED FURTHER, that each of the Authorized Persons of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to file or to authorize the collateral agent under the DIP Facility (the "**DIP Agent**") to file any Uniform Commercial Code (the "**UCC**") financing statements, any other equivalent filings, any intellectual property filings and recordation, and any necessary assignments for security or other documents in the name of each Company that the DIP Agent deems necessary or appropriate to perfect any lien or security interest granted under the DIP Order, including any such UCC financing statement containing a generic description of collateral, such as "all assets," "all property now or hereafter acquired," and other similar descriptions of like import, and to execute and deliver, and to record or authorize the recording of, such mortgages and deeds of trust in

respect of real property of each Company and such other filings in respect of intellectual and other property of each Company, in each case as the DIP Agent may reasonably request to perfect the security interests of the DIP Agent under the DIP Order;

RESOLVED FURTHER, that each of the Authorized Persons of each Company be, and hereby is, authorized, directed, and empowered in the name of, and on behalf of, each Company to take all such further actions, including, without limitation, to pay or approve the payment of all fees and expenses payable in connection with the DIP Transactions and all fees and expenses incurred by or on behalf of each Company in connection with the foregoing resolutions, in accordance with the terms of the DIP Documents, which shall in their sole judgment be necessary, proper, or advisable to perform each Company's obligations under or in connection with the DIP Order or any of the other DIP Documents and the transactions contemplated therein and to carry out fully the intent of the foregoing resolutions;

Filing of the Plan and Disclosure Statement

RESOLVED FURTHER, that in the business judgment of each of the Authorized Persons, it is desirable and in the best interest of the Company, its creditors, and other parties in interest that the Company file or cause to be filed the Plan and the Disclosure Statement, and all other papers or documents (including any amendments) related thereto, and to take any and all actions necessary or appropriate to file or cause to filed the Plan and the Disclosure Statement.

Marketing and Sale Process and Strategic Transaction

RESOLVED FURTHER, that each Company, with the assistance of its Advisors, is authorized to continue marketing all or a subset of the Core Centers Assets, including contacting, discussing, negotiating, and soliciting offers from potential bidders, including conducting any auction in connection therewith, through the bankruptcy process in order to receive the highest or otherwise best offer for the sale of all or a subset of the Company's Core Centers Assets (the "**Sale Process**");

RESOLVED FURTHER, that each Company be, and hereby is, and the Authorized Persons shall be, and each of them, acting alone, hereby is, in the name and on behalf of the applicable Company, authorized, directed and empowered to file motions with the Bankruptcy Court (the "**Sale Motions**") seeking entry of orders (a) authorizing and approving bidding procedures; (b) approving the Company's entrance into the SPA and approving bid protections, as applicable; (c) approving the form and manner of sale notices, potential assumption and assignment notices, and post-auction notices; and (d) approving assumption and assignment procedures, among other things (subject in all respects to the terms and conditions of the SPAs and the approval of the Bankruptcy Court), all substantially in accordance with the documents presented to or described to the Governing Bodies prior to the date hereof, subject to such modifications thereto as the Authorized Persons may deem necessary or advisable (the approval of which to be conclusively established by the execution thereof by an Authorized Person), and (e) approving that certain Services Agreement by and between CareMax, Inc. and the MSO Purchaser;

RESOLVED FURTHER, that the Governing Bodies hereby authorize, approve, ratify, and confirm each Company's entry into the SPA, as applicable, in the form presented to or described to the Governing Bodies, with additions, deletions or changes (including, without limitation, any additions, deletions or changes to any schedules or exhibits thereto) that the Authorized Person(s) executing the same shall approve (the "**Transaction Documents**") to which the Company is party, and the performance of the Company's obligations thereunder and (subject to the approval of the Bankruptcy Court) the consummation of the transactions contemplated thereby;

RESOLVED FURTHER, that Authorized Persons be, and each of them hereby individually is,

authorized and empowered to execute and deliver the SPA, the Transaction Documents, and any and all certificates, agreements, instruments, documents and undertakings of any kind and nature contemplated thereunder to which the Company is to be a party or as are necessary or appropriate to consummate the transactions contemplated by the SPAs or the Transaction Documents, in the name and on behalf of the Company, with such additions, deletions or changes therein (including, without limitation, any additions, deletions or changes to any schedules or exhibits thereto) as the Authorized Person executing the same shall approve (the execution and delivery thereof by the Authorized Person to be conclusive evidence of such Authorized Person's approval of any such additions, deletions or changes);

RESOLVED FURTHER, that each of the Authorized Persons be, and hereby is, authorized and empowered to take any and all actions necessary or advisable to advance each Company's rights and obligations in connection with the Sale Process, including the filing of additional pleadings with the Bankruptcy Court; and in connection therewith, each Authorized Person, with power of delegation, is hereby authorized and directed to take all necessary actions in furtherance of the foregoing resolutions;

RESOLVED FURTHER, in addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by each Company's governing documents and applicable law, be, and each of them hereby is, authorized to execute (under hand or under the common seal of the Company, if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of the Company relating to the Sale Process;

Further Actions and Prior Actions

RESOLVED FURTHER, that in addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by each Company's governing documents and applicable law, be, and each of them hereby is, authorized to execute (under hand or under the common seal of each Company if appropriate), acknowledge, deliver, and file any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds and other documents on behalf of each Company relating to the Bankruptcy Cases;

RESOLVED FURTHER, that each of the Authorized Persons, each acting individually and with full power of substitution be, and hereby is, authorized, empowered, and directed to execute and file all petitions, schedules, motions, lists, applications, pleadings, and other papers, and to perform such further actions and execute such further documentation that such Authorized Person in their absolute discretion deems necessary, appropriate, or desirable in accordance with these resolutions;

RESOLVED FURTHER, that, in addition to the specific authorizations heretofore conferred upon the Authorized Persons, the Authorized Persons, either individually or as otherwise required by each Company's governing documents and applicable law, be, and each of them hereby is, authorized to take any and all such other and further actions, and to do all such other deeds and other things as each Company itself may lawfully do, in accordance with its governing documents and applicable law, including but not limited to, the negotiation, finalization, execution, acknowledgement, delivery, and filing of any and all agreements, certificates, instruments, powers of attorney, letters, forms, transfer, deeds, and other documents on behalf of each Company, and the payment of all expenses, including but not limited to filing fees, in each case as such Authorized Person or Authorized Persons may, in his/her/its/their absolute and unfettered discretion approve, deem or determine necessary, appropriate, advisable, or desirable in order to fully carry out the intent and accomplish the purposes of the resolutions adopted herein; such approval, deeming, or determination to be conclusively evidenced by said individual taking such action or the execution thereof;

RESOLVED FURTHER, that to the extent that any Company (in this capacity, a "**Parent Consenting Party**") is also a direct or indirect Authorized Person with respect to another Company, each Authorized Person for such Parent Consenting Party is hereby authorized to execute this written consent in the name and on behalf of such Parent Consenting Party in its capacity as an Authorized Person with respect to any applicable subsidiary Company;

RESOLVED FURTHER, that each Governing Body has received sufficient notice of the actions and transactions relating to the matters contemplated by the foregoing resolutions, as may be required by the organizational documents of each Company, or hereby waives any right to have received such notice; and

RESOLVED FURTHER, that all acts, actions, and transactions relating to the matters contemplated by the foregoing resolutions done in the name of and on behalf of each Company, which acts would have been approved by the foregoing resolutions except that such acts were taken before the adoption of these resolutions, are hereby in all respects approved, confirmed and ratified as the true acts and deeds of each Company with the same force and effect as if each such act, transaction, agreement, or certificate had been specifically authorized in advance by resolution of each Governing Body.

[SIGNATURE PAGES FOLLOW]

**IN WITNESS WHEREOF**, the undersigned, being the sole manager of Interamerican Medical Center Group, LLC, has executed this unanimous written consent as of the date first set forth above.

<u>**MANAGER OF THE COMPANY**</u>

IMC MEDICAL GROUP HOLDINGS, LLC

By: _Kevin Wirges_
    2EA174B32BB84F7...
Name: Kevin Wirges
Title: Chief Financial Officer, Vice President, Treasurer and Secretary

**IN WITNESS WHEREOF**, the undersigned, being the sole manager of each the entities listed on **Schedule B,** has executed this unanimous written consent as of the date first set forth above.

**MANAGER OF THE COMPANY**

INTERAMERICAN MEDICAL CENTER GROUP, LLC

By: _____

Name: Kevin Wirges
Title: Chief Financial Officer, Vice President, Treasurer and Secretary

**IN WITNESS WHEREOF**, the undersigned, being the sole manager of Sunset Cardiology, LLC, has executed this unanimous written consent as of the date first set forth above.

<u>**MANAGER OF THE COMPANY**</u>

SUNSET HOLDING, LLC

Signed by:

*Kevin Wirges*
2EA174B32BB84F7...

By: _____
Name: Kevin Wirges
Title: Chief Financial Officer, Vice President, Treasurer and Secretary

**IN WITNESS WHEREOF**, the undersigned, being the sole member of the board of directors of Primary Provider, Inc. has executed this unanimous written consent as of the date first set forth above.

Signed by:

*Kevin Wirges*

By: ___2EA174B32BB84F7..._____

Name:    Kevin Wirges

**IN WITNESS WHEREOF**, the undersigned, being the Authorized Person of the sole member of each entity listed on **Schedule C**, has executed this unanimous written consent as of the date first set forth above.

## **SOLE MEMBER**

CARE HOLDINGS GROUP, LLC

By: _Kevin Wirges_
2EA174B32BB84F7...
Name: Kevin Wirges
Title: Chief Financial Officer

**IN WITNESS WHEREOF**, the undersigned, being the Authorized Person of the member of each entity listed on **Schedule D**, has executed this unanimous written consent as of the date first set forth above.

<b><u>MEMBER</u></b>

CAREMAX MEDICAL GROUP, L.L.C.

By: _____
Name: Kevin Wirges
Title: Chief Financial Officer

**IN WITNESS WHEREOF**, the undersigned, being the Authorized Person of the sole member of CareMed Pharmacy LLC, has executed this unanimous written consent as of the date first set forth above.

<u>**SOLE MEMBER**</u>

CLEAR SCRIPTS, L.L.C.

Signed by:

*Kevin Wirges*

By: _____
2EA174B32BB84F7...

Name: Kevin Wirges
Title: Chief Financial Officer

**IN WITNESS WHEREOF**, the undersigned, being each of the members of the board of managers of CareMax IPA, LLC, have executed this unanimous written consent as of the date first set forth above.

By: _____
Name:  Carlos de Solo

By: _____
Name:  Alberto de Solo

*[Signature Page to Omnibus Consent]*

**IN WITNESS WHEREOF**, the undersigned, being the Authorized Person of the sole member of the entity listed on **Schedule E**, has executed this unanimous written consent as of the date first set forth above.

**SOLE MEMBER**

CAREMAX, INC.

By: _Kevin Wirges_
    2EA174B32BB84F7...
Name:  Kevin Wirges
Title:   Chief Financial Officer

**IN WITNESS WHEREOF**, the undersigned, being a majority of the Managers of each entity listed on **Schedule F** hereto, have executed this unanimous written consent as of the date first set forth above.

By:
Name:  Carlos de Solo
Title:    Chief Executive Officer and Manager

By:
Name:  Alberto de Solo
Title:    Chief Operating Officer and Manager

By:
Name: Teresa McMeans
Title: Chief Compliance Officer and Manager

By:
Name: Meredith Longsworth
Title:   General Counsel and Manager

By:
Name: Mark Llorente
Title:   Chief Administrative Officer and Manager

By:
Name: Niberto Moreno, M.D.
Title:   Chief Medical Officer and Manager

By:
Name: Kevin Wirges
Title:   Chief Financial Officer and Manager

*[Signature Page to Omnibus Consent]*

**IN WITNESS WHEREOF**, the undersigned, being a majority of the Managers of CareMax Accountable Care Network, LLC, have executed this unanimous written consent as of the date first set forth above.

By: _____
    D9D6B7FC503C43A...
Name:  Alberto de Solo
Title:   Chief Operating Officer and Manager

By: _____
    6307D23C1B5C418...
Name: Teresa McMeans
Title: Chief Compliance Officer and Manager

By: _____
    6EDF278047F14C4...
Name: Meredith Longsworth
Title:   General Counsel and Manager

By: _____
    2D492C9AA90F484...
Name: Mark Llorente
Title:   Chief Administrative Officer and Manager

By: _____
    429FA3576EDD46D...
Name: Niberto Moreno, M.D.
Title:   Chief Medical Officer and Manager

*[Signature Page to Omnibus Consent]*

**IN WITNESS WHEREOF**, the undersigned, being the Authorized Person of the Member of the entity listed on **Schedule G** hereto, has executed this unanimous written consent as of the date first set forth above.

Sparta Merger Sub I LLC

By: _____
    Signed by:
    *Kevin Wirges*
    2EA174B32BB84F7...

Name: Kevin Wirges
Title: Chief Financial Officer

*[Signature Page to Omnibus Consent]*

**IN WITNESS WHEREOF**, the undersigned, being the Authorized Person of the sole member of each entity listed on **Schedule H** has executed this unanimous written consent as of the date first set forth above.

**SOLE MEMBER**

INTERAMERICAN MEDICAL CENTER GROUP, LLC

By: _Kevin Wirges_
 2EA174B32BB84F7
Name: Kevin Wirges
Title: Chief Financial Officer, Vice President, Treasurer and Secretary

**IN WITNESS WHEREOF**, the undersigned, being the Authorized Person of the sole member of each entity listed on **Schedule I**, has executed this unanimous written consent as of the date first set forth above.

### SOLE MEMBER

CAREMAX HOLDINGS, LLC

By: _Kevin Wirges_
2EA174B32BB84F7...
Name: Kevin Wirges
Title: Chief Financial Officer

**IN WITNESS WHEREOF**, the undersigned, being sole member of each entity listed on **<u>Schedule J</u>**, has executed this unanimous written consent as of the date first set forth above.

<u>**SOLE MEMBER**</u>

Signed by:

*Niberto Moreno*

429FA3576EDD46D...

Niberto Moreno, M.D.

**IN WITNESS WHEREOF**, the undersigned, being the sole director of Medical Care of NY, P.C., has executed this unanimous written consent as of the date first set forth above.

<u>**SOLE DIRECTOR**</u>

Signed by:

*Niberto Moreno*

429FA3576EDD46D...

Niberto Moreno, M.D.

**IN WITNESS WHEREOF,** the undersigned, being the sole member of Care Optical, L.L.C., has executed this unanimous written consent as of the date first set forth above.

SOLE MEMBER

Melody Bolaños, O.D.

*[Signature Page to Omnibus Consent]*

**IN WITNESS WHEREOF**, the undersigned, being the sole member of the board of directors of RX Marine Inc., has executed this unanimous written consent as of the date first set forth above.

Signed by:

*kevin Wirges*

2EA174B32BB84F7...

By: _____

Name:  Kevin Wirges

## SCHEDULE A

1. IMC Medical Group Holdings, LLC
2. Sunset Holding, LLC
3. Care Holdings Group, LLC
4. Care Optimize, LLC
5. Care Garage, LLC
6. Care Alliance, LLC
7. Analitico, LLC
8. CareMax Management LLC
9. Interamerican Medical Center Group, LLC
10. Physician Service Organization LLC
11. Sunset Cardiology, LLC
12. Primary Provider, Inc.
13. CareMax Medical Group, L.L.C.
14. Caremax Medical Center of Broward, L.L.C.
15. Caremax Medical Center of Hialeah, L.L.C.
16. Caremax Medical Center of Homestead, L.L.C.
17. Caremax of Miami, L.L.C.
18. Caremax Medical Center of North Miami, L.L.C.
19. Caremax Medical Center of Pembroke Pines, L.L.C.
20. Caremax Medical Center of Coral Way, L.L.C.
21. Caremax Medical Center of Tamarac, L.L.C.
22. Caremax Medical Center of Westchester, L.L.C.
23. Caremax Medical Center of Little Havana, L.L.C.
24. Caremax Medical Center of Little Havana II, L.L.C.
25. Pines Care Medical Center, LLC
26. Caremax Medical Center of East Hialeah, L.L.C.
27. Caremax Medical Center, LLC
28. Healthcare Advisory Solutions, L.L.C.
29. Managed Healthcare Partners LLC
30. Clear Scripts, L.L.C.
31. Caremax Medical Centers of Central Florida, LLC
32. Senior Medical Associates, LLC
33. Stallion Medical Management, LLC
34. IMC Transport Fleet, LLC
35. Jose Orcasita-NG, LLC
36. Jesus Montesano MD, LLC
37. CareMed Pharmacy LLC
38. CareMax IPA, LLC
39. CareMax Holdings, LLC
40. Sparta Merger Sub I LLC
41. Sparta Merger Sub II LLC
42. Sparta Merger Sub III LLC
43. Caremax Accountable Care Network, LLC
44. Caremax Health Partners, LLC
45. Caremax National Care Network, LLC
46. Sparta Texas ACO, Inc.
47. Medical Care of Texas, PLLC
48. Medical Care of Tennessee, PLLC
49. Medical Care of NY, P.C.

50. Care Optical, L.L.C.
51. RX Marine Inc.
52. CareMax Medical Centers of Louisiana, L.L.C.
53. Sapphire Holdings, LLC

## **SCHEDULE B**

PHYSICIAN SERVICE ORGANIZATION LLC
SUNSET HOLDING, LLC

## **SCHEDULE C**

CARE ALLIANCE, LLC
CARE OPTIMIZE, LLC
CARE GARAGE, LLC
HEALTHCARE ADVISORY SOLUTIONS, L.L.C.
ANALITICO, LLC

## SCHEDULE D

CARE HOLDINGS GROUP, L.L.C.
CAREMAX MEDICAL CENTER OF BROWARD, L.L.C.
CAREMAX MEDICAL CENTER OF HIALEAH, L.L.C.
CAREMAX MEDICAL CENTER OF HOMESTEAD, L.L.C.
CAREMAX OF MIAMI, L.L.C.
CAREMAX MEDICAL CENTER OF NORTH MIAMI, L.L.C.
CAREMAX MEDICAL CENTER OF PEMBROKE PINES, L.L.C.
CAREMAX MEDICAL CENTER OF CORAL WAY, L.L.C.
CAREMAX MEDICAL CENTER OF TAMARAC, L.L.C.
CAREMAX MEDICAL CENTER OF WESTCHESTER, L.L.C.
CAREMAX MEDICAL CENTER OF LITTLE HAVANA, L.L.C.
CAREMAX MEDICAL CENTER OF LITTLE HAVANA II, L.L.C.
PINES CARE MEDICAL CENTER, LLC.
CAREMAX MEDICAL CENTER OF EAST HIALEAH, L.L.C.
CAREMAX MEDICAL CENTER, LLC
CAREMAX MEDICAL CENTERS OF CENTRAL FLORIDA, LLC
MANAGED HEALTHCARE PARTNERS LLC
CLEAR SCRIPTS, L.L.C.
CAREMAX MEDICAL CENTERS OF LOUISIANA, LLC

## **SCHEDULE E**

CAREMAX HOLDINGS, LLC

## **SCHEDULE F**

CAREMAX ACCOUNTABLE CARE NETWORK, LLC
CAREMAX HEALTH PARTNERS, LLC
CAREMAX NATIONAL CARE NETWORK, LLC

## **SCHEDULE G**

SPARTA TEXAS ACO, INC.

## **SCHEDULE H**

JOSE ORCASITA-NG, LLC
JESUS MONTESANO MD, LLC
IMC TRANSPORT FLEET, LLC
SENIOR MEDICAL ASSOCIATES, LLC
STALLION MEDICAL MANAGEMENT, LLC

## <u>SCHEDULE I</u>

CAREMAX MEDICAL GROUP, L.L.C.
SPARTA MERGER SUB I LLC
SPARTA MERGER SUB II LLC
SPARTA MERGER SUB III LLC
CAREMAX MANAGEMENT LLC
IMC MEDICAL GROUP HOLDINGS, LLC
SAPPHIRE HOLDINGS, LLC

## **SCHEDULE J**

MEDICAL CARE OF TEXAS, PLLC
MEDICAL CARE OF TENNESSEE, PLLC

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| CARE ALLIANCE, L.L.C., | ) | Case No. 24-_____(___) |
| | ) | |
| Debtor. | ) | |
| | ) | |

## LIST OF EQUITY SECURITY HOLDERS

| Equity Holder | Address of Equity Holder | Percentage of Equity Held |
|---|---|---|
| Care Holdings Group, L.L.C. | 1000 NW 57 Court, Suite 400 Miami, FL 33126 | 100% |

This list serves as the disclosure required to be made by the debtor pursuant to Rule 1007 of the Federal Rules of Bankruptcy Procedure. All equity positions listed indicate the record holder of such equity as of the date of commencement of the chapter 11 case.

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | |
|---|---|
| In re: | Chapter 11 |
| CAREMAX, INC., *et al.*,[1] | Case No.: _____ |
| Debtors. | (Joint Administration Requested) |

**CONSOLIDATED CORPORATE OWNERSHIP
STATEMENT PURSUANT TO FED. R. BANKR. P. 1007 AND 7007.1**

Pursuant to Rules 1007(a)(1) and 7007.1 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), attached hereto as **Exhibit A** is an organizational chart reflecting the ownership interests in CareMax, Inc. and its debtor affiliates (each, a "Debtor" and collectively, the "Debtors"). The Debtors respectfully represent as follows:

1. CareMax, Inc.'s equity is publicly traded. The Debtors have requested a waiver of the requirement under Bankruptcy Rule 1007 to file a list of all of CareMax, Inc.'s equity security holders.[2] However, a list of entities owning, controlling, holding, or with the power to vote 5% or more of CareMax Inc.'s voting securities is provided on Form 201A of CareMax Inc.'s petition.

2. CareMax Inc. owns, directly or indirectly, 100% of the outstanding equity interests of the remaining Debtors, subject to the following exceptions:

    a. Medical Care of Texas, P.L.L.C. (a physician-owned entity 100% owned by Dr. Niberto Moreno).

    b. Medical Care of Tennessee, P.L.L.C. (a physician-owned entity 100% owned by Dr. Niberto Moreno).

    c. Medical Care of NY, P.C. (a physician-owned entity 100% owned by Dr. Niberto Moreno).

    d. Care Optical, L.L.C. (a physician-owned entity 100% owned by Dr. Melody Bolanos).

---

[1] A complete list of each of the Debtors in these chapter 11 cases may be obtained on the website of the Debtors' proposed claims and noticing agent at https://cases.stretto.com/CareMax. The Debtors' mailing address is 1000 NW 57 Court, Suite 400, Miami, Florida 33126.

[2] By the *Debtor's Emergency Motion for Entry of an Order (I) Authorizing the Debtors to (A) File a Consolidated Creditor Matrix and (B) File a Consolidated List of 30 Largest Unsecured Creditors; (II) Waiving the Requirement to File a List of Equity Security Holders; (III) Authorizing the Debtors to Redact Certain Personally Identifiable Information; (IV) Establishing a Complex Service List; (V) Approving the Form and Manner of the Notice of Commencement; and (VI) Granting Related Relief* filed contemporaneously herewith, the Debtors are requesting a waiver of the requirement under Bankruptcy Rule 1007 to file a list of all of its equity security holders for CareMax, Inc. For the avoidance of doubt, all classes of CareMax, Inc. equity are voting securities.

**Exhibit A**

**Organizational Chart**



Fill in this information to identify the case:

| Debtor name: CareMax, Inc., et al. |
| United States Bankruptcy Court for the: Northern District of Texas |
| Case number (If known): |

☐ Check if this is an amended filing

## Official Form 204

## Chapter 11 or Chapter 9 Cases: Consolidated List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders

12/15

A list of creditors holding the 30 largest unsecured claims must be filed in a Chapter 11 or Chapter 9 case. Include claims which the debtor disputes. Do not include claims by any person or entity who is an insider, as defined in 11 U.S.C. § 101(31). Also, do not include claims by secured creditors, unless the unsecured claim resulting from inadequate collateral value places the creditor among the holders of the 30 largest unsecured claims.

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 1 | HEALTH CATALYST, INC. 10897 SOUTH RIVER FRONT PARKWAY SUITE 300 SOUTH JORDAN, UT 84095 UNITED STATES | DAN BURTON CHIEF EXECUTIVE OFFICER EMAIL - dan.burton@healthcatalyst.com PHONE - 614-255-5400 FAX - | Trade Payable | | | | $ 1,383,506 |
| 2 | ELEVANCE HEALTH, INC. 220 VIRGINIA AVE INDIANAPOLIS, IN 46203 UNITED STATES | ELENA MCFANN PRESIDENT EMAIL - elena.mcfann@elevancehealth.com PHONE - 682-209-0335 FAX - | Loan | | | | $ 846,535 |
| 3 | FORESEE MEDICAL, INC. 11622 EL CAMINO REAL SUITE 100 SAN DIEGO, CA 92130 UNITED STATES | JONATHAN FLAM CHIEF FINANCIAL OFFICER AND CO-FOUNDER EMAIL - jflam@foreseemed.com PHONE - 858-523-2120 FAX - | Trade Payable | | | | $ 722,222 |
| 4 | TH PSL VILLAGE PARKWAY LLC C/O TURNER IMPACT CAPITAL 1702 OLYMPIC BOULEVARD SANTA MONICA, CA 90404 UNITED STATES | LYNNE LOVASCO VICE PRESIDENT OF INVESTORY RELATIONS EMAIL - llovasco@turnerimpact.com PHONE - 310-752-9600 FAX - | Rent | | | | $ 650,228 |
| 5 | BUILDOUT PROS, LLC 5050 NEWPORT DRIVE SUITE 5 ROLLING MEADOWS, IL 60008 UNITED STATES | BILL WESTMORELAND COMPANY OWNER EMAIL - bwestmoreland@buildoutpros.com PHONE - 847-749-0165 FAX - 847-749-0169 | Trade Payable | | | | $ 603,514 |
| 6 | TH MIAMI NORTHLAKE LLC C/O TURNER IMPACT CAPITAL 3000 OLYMPIC BLVD SUITE 2120 SANTA MONICA, CA 90404 UNITED STATES | LYNNE LOVASCO VICE PRESIDENT OF INVESTORY RELATIONS EMAIL - llovasco@turnerimpact.com PHONE - 310-752-9600 FAX - | Rent | | | | $ 553,837 |
| 7 | ISRAEL FAMILY 3401 DEER CREEK LLC C/O KEI PROPERTIES 1922 NORTHEAST 149TH STREET NORTH MIAMI, FL 33181 UNITED STATES | KENNETH ISRAEL CHIEF EXECUTIVE OFFICE AND OWNER EMAIL - ken@KEIProperties.com PHONE - 305-776-9194 / 954-951-1393 FAX - | Rent | | | | $ 522,109 |
| 8 | THFF REIT LLC -DAYTONA BEACH 1702 OLYMPIC BLVD SANTA MONICA, CA 90404 UNITED STATES | LYNNE LOVASCO VICE PRESIDENT OF INVESTORY RELATIONS EMAIL - llovasco@turnerimpact.com PHONE - 310-752-9600 FAX - | Rent | | | | $ 489,292 |
| 9 | CARDINAL HEALTH, INC 7000 CARDINAL PLACE DUBLIN, OH 43017 UNITED STATES | JASON HOLLAR CHIEF EXECUTIVE OFFICER EMAIL - jason.hollar@cardinalhealth.com PHONE - FAX - | Trade Payable | | | | $ 455,731 |
| 10 | ROSS + ROSS LLC 1950 3RD AVENUE 2ND FLOOR NEW YORK, NY 10029 UNITED STATES | RAFAEL JUNIOR COMPANY REPRESENTATIVE EMAIL - rafael.ehpm@gmail.com PHONE - FAX - | Rent | | | | $ 418,847 |
| 11 | TH ORLANDO 8575 NE 138 LLC C/O TURNER IMPACT CAPITAL 1702 OLYMPIC BOULEVARD SANTA MONICA, CA 90404 UNITED STATES | LYNNE LOVASCO VICE PRESIDENT OF INVESTORY RELATIONS EMAIL - llovasco@turnerimpact.com PHONE - 310-752-9600 FAX - | Rent | | | | $ 373,207 |

Debtor  __CareMax, Inc., et al.__                                                                          Case number (if known)_____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 12 | FVP RE WEST HIALEAH , LLC C/O FLORIDA VALUE PARTNERS 15500 NEW BARN ROAD SUITE 104 MIAMI LAKES, FL  33014 UNITED STATES | GUS ALFONSO MANAGING PARTNER EMAIL - galfonso@fvpre.com PHONE - 786-255-5803 FAX - | Rent | | | | $          372,961 |
| 13 | CP PEMBROKE PINES, LLC C/O SELECT STRATEGIES REALTY 3850 HOLLYWOOD BLVD SUITE 400 HOLLYWOOD, FL  33021 UNITED STATES | MARY LOU DAVIS EXECUTIVE VICE PRESIDENT OF PROPERTY MANAGEMENT EMAIL - mdavis@selectstrat.com PHONE - 321-558-3860 / 407-509-1552 FAX - | Rent | | | | $          355,730 |
| 14 | TH PALM BAY 548 BARTON LLC C/O TURNER IMPACT CAPITAL 1702 OLYMPIC BOULEVARD SANTA MONICA, CA  90404 UNITED STATES | LYNNE LOVASCO VICE PRESIDENT OF INVESTORY RELATIONS EMAIL - llovasco@turnerimpact.com PHONE - 310-752-9600 FAX - | Rent | | | | $          331,724 |
| 15 | TH PALM BAY 470 MALABAR LLC C/O TURNER IMPACT CAPITAL 1702 OLYMPIC BOULEVARD SANTA MONICA, CA  90404 UNITED STATES | LYNNE LOVASCO VICE PRESIDENT OF INVESTORY RELATIONS EMAIL - llovasco@turnerimpact.com PHONE - 310-752-9600 FAX - | Rent | | | | $          330,653 |
| 16 | BTM DEVELOPMENT PARTNERS LLC C/O RELATED COMPANIES 30 HUDSON YARDS NEW YORK, NY  10001 UNITED STATES | JEFF BLAU CHIEF EXECUTIVE OFFICER EMAIL - jblau@related.com PHONE - FAX - | Rent | | | | $          317,575 |
| 17 | THFF REIT LLC-TITUSVILLE C/O TURNER IMPACT CAPITAL 1702 OLYMPIC BOULEVARD SANTA MONICA, CA  90404 UNITED STATES | LYNNE LOVASCO VICE PRESIDENT OF INVESTORY RELATIONS EMAIL - llovasco@turnerimpact.com PHONE - 310-752-9600 FAX - | Rent | | | | $          289,304 |
| 18 | JSB REALTY NO 3 LLC C/O BAWABEH HOLDINGS 15 OCEAN AVENUE BROOKLYN, NY  11225 UNITED STATES | SOLY D BAWABEH PARTNER EMAIL - solyd@bawabeh.com PHONE - 718-703-8441 FAX - | Rent | | | | $          272,495 |
| 19 | TH MEMPHIS RAINES LLC C/O TURNER IMPACT CAPITAL 1702 OLYMPIC BOULEVARD SANTA MONICA, CA  90404 UNITED STATES | LYNNE LOVASCO VICE PRESIDENT OF INVESTORY RELATIONS EMAIL - llovasco@turnerimpact.com PHONE - 310-752-9600 FAX - | Rent | | | | $          268,487 |
| 20 | CONNECT C3 12915 SW 132ND ST SUITE 4 MIAMI, FL  33186 UNITED STATES | ILDEFONSO BALART OWNER EMAIL - Fonsi@connectc3.com PHONE - 305-275-0900 FAX - | Trade Payable | | | | $          253,248 |
| 21 | LOCKTON COMPANIES 444 W 47TH ST SUITE 900 KANSAS CITY, MO  64112 UNITED STATES | RON LOCKTON CHAIRMAN AND CHIEF EXECUTIVE OFFICER EMAIL - rlockton@lockton.com PHONE - FAX - | Trade Payable | | | | $          232,351 |
| 22 | LEASEFLORIDA FT.PIERCE, LLC 5901 NORTHWEST 151ST ST SUITE 126 MIAMI LAKES, FL  33014 UNITED STATES | ALAN WASERSTEIN PRINCIPAL OWNER EMAIL - alan@leaseflorida.com PHONE - 786-703-1731 FAX - | Rent | | | | $          221,805 |
| 23 | RINGCENTRAL INC 20 DAVIS DRIVE BELMONT, CA  94002 UNITED STATES | VLAD SHMUNIS FOUNDER, CHIEF EXECUTIVE OFFICER, CHAIRMAN EMAIL - vlads@ringcentral.com PHONE - 888-528-7464 FAX - | Trade Payable | | | | $          210,519 |
| 24 | NEXTGEN HEALTHCARE INC 18111 VON KARMAN ST STE. 800 IRVINE, CA  92612 UNITED STATES | DAVID SIDES CHIEF EXECUTIVE OFFICER EMAIL - dsides@nextgen.com PHONE - 972-625-1751 FAX - | Trade Payable | | | | $          196,620 |
| 25 | FVP RE OCALA 3200 LLC C/O FLORIDA VALUE PARTNERS 15500 NEW BARN ROAD SUITE 104 HIALEAH, FL  33014 UNITED STATES | GUS ALFONSO MANAGING PARTNER EMAIL - galfonso@fvpre.com PHONE - 786-255-5803 FAX - | Rent | | | | $          186,713 |

Debtor ___CareMax, Inc., et al._____    Case number (if known)_____

| | Name of creditor and complete mailing address, including zip code | Name, telephone number, and email address of creditor contact | Nature of the claim (for example, trade debts, bank loans, professional services, and government contracts) | Indicate if claim is contingent, unliquidated, or disputed | Amount of unsecured claim if the claim is fully unsecured, fill in only unsecured claim amount. If claim is partially secured, fill in total claim amount and deduction for value of collateral or setoff to calculate unsecured claim. | | |
|---|---|---|---|---|---|---|---|
| | | | | | Total claim, if partially secured | Deduction for value of collateral or setoff | Unsecured claim |
| 26 | APEX PLACE PH LLC C/O PHIPPS HOUSES SERVICES, INC 902 BROADWAY 13TH FLOOR NEW YORK, NY  10010 UNITED STATES | ADAM WEINSTEIN PRESIDENT AND CEO EMAIL - aweinstein@phippsny.org PHONE - FAX - | Rent | | | | $     174,327 |
| 27 | 1675 JV ASSOCIATES, LLC C/O PHIPPS HOUSES SERVICES, INC 902 BROADWAY 13TH FLOOR NEW YORK, NY  10010 UNITED STATES | ADAM WEINSTEIN PRESIDENT AND CEO EMAIL - aweinstein@phippsny.org PHONE - FAX - | Rent | | | | $     164,563 |
| 28 | FLAGLER WEST CORPORATE CENTER, LLC 8700 WEST FLAGLER STREET SUITE 175 MIAMI, FL  33174 UNITED STATES | HELEN SPITZER COMPANY REPRESENTATIVE EMAIL - spitzer.helen14@gmail.com PHONE - 917-282-4882 FAX - | Rent | | | | $     161,831 |
| 29 | IDEAL DENTAL, INC 8603 S DIXIE HWY SUITE 411 MIAMI, FL  33143 UNITED STATES | MAGIN CARRERAS PRESIDENT EMAIL - magin@idealdentalinc.com PHONE - 305-771-0874 FAX - | Trade Payable | | | | $     159,011 |
| 30 | MILLIMAN, INC 1301 FIFTH AVE SUITE 3800 SEATTLE, WA  98101 UNITED STATES | JIM FULTON SENIOR VICE PRESIDENT AND CHIEF FINANCIAL OFFICER EMAIL - jim.fulton@milliman.com PHONE - FAX - | Trade Payable | | | | $     156,000 |

Fill in this information to identify the case and this filing:

| | |
|---|---|
| Debtor Name | CARE ALLIANCE, L.L.C. |
| United States Bankruptcy Court for the: | **Northern District of Texas** |
| | (State) |
| Case number (If known): | |

# Official Form 202
# Declaration Under Penalty of Perjury for Non-Individual Debtors    12/15

An individual who is authorized to act on behalf of a non-individual debtor, such as a corporation or partnership, must sign and submit this form for the schedules of assets and liabilities, any other document that requires a declaration that is not included in the document, and any amendments of those documents. This form must state the individual's position or relationship to the debtor, the identity of the document, and the date. Bankruptcy Rules 1008 and 9011.

WARNING -- Bankruptcy fraud is a serious crime. Making a false statement, concealing property, or obtaining money or property by fraud in connection with a bankruptcy case can result in fines up to $500,000 or imprisonment for up to 20 years, or both. 18 U.S.C. §§ 152, 1341, 1519, and 3571.

## Declaration and signature

I am the president, another officer, or an authorized agent of the corporation; a member or an authorized agent of the partnership; or another individual serving as a representative of the debtor in this case.

I have examined the information in the documents checked below and I have a reasonable belief that the information is true and correct:

☐  *Schedule A/B: Assets-Real and Personal Property (Official Form 206A/B)*

☐  *Schedule D: Creditors Who Have Claims Secured by Property (Official Form 206D)*

☐  *Schedule E/F: Creditors Who Have Unsecured Claims (Official Form 206E/F)*

☐  *Schedule G: Executory Contracts and Unexpired Leases (Official Form 206G)*

☐  *Schedule H: Codebtors (Official Form 206H)*

☐  *Summary of Assets and Liabilities for Non-Individuals (Official Form 206Sum)*

☐  Amended Schedule

☒  *Chapter 11 or Chapter 9 Cases: List of Creditors Who Have the 30 Largest Unsecured Claims and Are Not Insiders (Official Form 204)*

☒  Other document that requires a declaration **List of Equity Security Holders, Consolidated Corporate Ownership Statement**

I declare under penalty of perjury that the foregoing is true and correct.

Executed on    11/17/2024
                MM/ DD/YYYY

DocuSigned by:
*Paul Rundell*
4C315E3F4293460...

Signature of individual signing on behalf of debtor

**Paul Rundell**
Printed name

**Chief Restructuring Officer**
Position or relationship to debtor

**Official Form 202**          **Declaration Under Penalty of Perjury for Non-Individual Debtors**